ALLIED AMERICAN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31704. Promulgated April 26, 1932.

*Harold Wisan, Esq.,* and *Jacob Schapiro, Esq.,* for the petitioner.
*C. A. Ray, Esq.,* for the respondent.

OPINION.

ARUNDELL: From the course that this case took at the trial it becomes desirable for its better understanding that we relate some-

thing of its historical background. It appears that in its original return for the year 1923 petitioner sought to deduct $11,120.36, which amount it designated as "license tax to Russian Government." Thereafter in 1927 the respondent issued a notice of deficiency, and in said notice stated that the deduction claimed was disallowed, " * * * for the reason that the evidence submitted indicates the item to be distribution of profits and is disallowed in accordance with Article 1541, Regulations 62." Thereupon the petitioner instituted these proceedings. In 1928 and during the pendency of these proceedings petitioner filed with the Commissioner an amended return for the year 1923 in which it sought to deduct in lieu of the $11,120.36 the sum of $30,327.59, which amount it claimed as that paid to the Soviet Republics. The following errors were cited by petitioner:

(a) The payment to the Russian Government, which the Commissioner claims is a taxable distribution of profits to a shareholder, was an absolute fixed minimum license fee for the privilege of doing business in territory controlled by the payee (Russian Government).

(b) The payment was not from profits, nor based thereon, but was based on the value of goods imported and exported by the petitioner during a fixed period.

(c) Regardless of the presence or absence of profits, the payment had to be made by the petitioner, and was not refundable.

(d) The payee (Russian Government) was neither a shareholder nor a stockholder in the petitioner.

Respondent's answer was a general denial.

The testimony offered by the petitioner clearly established the payment by it to the Soviet Republics in December, 1923, of gold rubles of the value in American money of $30,327.59; that the amount so paid was an absolute fixed minimum license fee for the privilege of doing business in Russia and was based on the value of goods imported and exported by the petitioner during a fixed period and no part of it was refundable; and, further, that the payee, the Soviet Republics, was not a stockholder of petitioner. On these undisputed facts petitioner claims that it is entitled to deduct the $30,327.59 either as a tax or as an ordinary and necessary expense of carrying on a trade or business.

The petitioner had been carrying on business in Russia for some time prior to 1923, when apparently there were no trade restrictions. In 1923 the Soviet Republics enjoyed a monopoly of buying and selling within its territory as well as the importation into and exportation of goods out of the country and forbade others under penalty of death to engage in such trade without first entering into an agreement with the Peoples Commissariat of Foreign Trade of the form executed by the petitioner. Petitioner's president in 1923 commenced

negotiations with the proper officials of the Soviet Republics for a trading permit or concession, and, after discussing the subject for a " few months," reached an understanding, the terms of which were embodied in the agreement of July 14, 1923. Thus, it appears that the concession agreement was reached only after prolonged negotiations carried on at arm's length between parties each striving for the best possible bargain. Had petitioner been able to negotiate a more advantageous contract we have no doubt that it would have done so. Then it was confronted with the problem of either paying for the privilege of doing business in the Soviet Republics or remaining out. We have no reason for questioning its motives for electing to do the former.

In this respect the instant case is unlike *Amtorg Trading Corporation*, 25 B. T. A. 327. That case was submitted on a stipulation of facts which failed to show the necessity of the agreement as a prerequisite to doing business. There the holder of the concession was shown to have been indirectly owned by the Soviet Republics.

On the issue as directly framed it would seem that the petitioner should prevail and that the amount of $30,327.59 paid to the Soviet Republics is properly deductible as an ordinary and necessary expense under section 234(a)(1) of the Revenue Act of 1921.

While it was not entirely clear until the conclusion of the trial and the receipt of respondent's brief exactly what his position was, it now appears that he no longer contests the fact of payment or contends that the amount paid constituted a distribution of profits within the meaning of the revenue act. He advances, however, two grounds for sustaining the deficiency determined by him; first, that the goods were sold to the Allied American Fur Sales Agency, Inc., in 1923 under an agreement whereby petitioner was to be reimbursed for its entire cost in securing the furs, including the amount paid to the Soviet Republics, and that the right to receive payment from the Agency would serve as an offset against the payment made to the Soviet Republics; and, secondly, in the alternative, that the amount paid to the Soviet Republics constituted a part of the cost of the furs, and as these goods were still owned by petitioner at the end of 1923 they would properly be carried in its inventory and consequently no deduction would be allowed. Thus it will be seen that the grounds on which the proceedings first started have been materially shifted by the respondent.

To properly understand the grounds relied upon by respondent, a brief discussion of petitioner's relations with the Allied American Fur Sales Agency, Inc., is necessary.

Shortly after petitioner was granted the concession, Sutta & Fuchs, large fur dealers, who were unable to obtain a trading permit with the Soviet Republics, approached petitioner with a proposition to acquire the fur rights under its license. Subsequent discussions of the question led to the organization of the Agency to exploit the concession in so far as it related to furs, and to the execution of an agreement on October 10, 1923. This agreement provided for the issuance to petitioner of one-half of the Agency's stock for the assignment to it of the fur rights under the concession; for the purchase of furs in Russia by petitioner for the Agency with funds supplied by the latter; for payment of $200,000 by Sutta & Fuchs to the Agency for shares of its stock; that upon application of the Agency, Sutta & Fuchs should maintain irrevocable letters of credit in the minimum amount of $300,000 for the purchase of furs by petitioner; that the Agency would pay to petitioner for the account of the NKVT such amounts as petitioner would have been required to pay the Soviet Republics had it transacted the fur business instead of the Agency; that all losses should be borne equally by petitioner and Sutta & Fuchs; that neither of them should sell its stock of the Agency without obtaining the consent of the other, and that the rights assigned were subject to the terms and conditions of the concession agreement.

Thereafter within the month petitioner made a purchase of furs under the contract at a cost of $171,124.71 and promptly shipped them to the Agency in care of the New York Auction Company, which sold the consignment at auction sales conducted during the early part of 1924, and in February of that year rendered a statement to petitioner of the transaction. The original cost of the furs was charged to the Agency on the New York books of petitioner in November, 1923. During the same month the Agency paid to petitioner in Moscow on account of the transaction the sum of $138,000 in the form of a letter of credit obtained by the New York Auction Company for that purpose. The balance of the purchase price was paid during the early part of 1924.

The first point is based entirely on paragraph 9 of the contract between petitioner and the Allied American Fur Sales Agency, Inc., et al., wherein it is provided that " The Agency agrees with the corporation that it will pay over to the corporation for the account of the Peoples Commissariat for Foreign Trade such amounts at such times as the corporation would be required by the concession to pay to said Peoples Commissariat had it transacted the fur business instead of the Agency." There is no doubt that this provision of the contract tends to support the respondent's position. Unex-

plained, the language is, in our judgment, sufficient to indicate that petitioner was to be reimbursed for the fee paid by it incident to the shipment of furs. There is, however, in the case the positive testimony of petitioner's president who had negotiated both contracts, namely, the one with the NKVT and the Agency contract, to the effect that petitioner was neither directly nor indirectly reimbursed by the Agency or anyone else for the fee paid by it; that the goods were to be and actually were sold and billed to the Agency at the first cost of $171,124.71; and that any amount payable to the NKVT for the privilege of exporting furs from Russia was to be an expense of petitioner alone. We think that this direct testimony must prevail over the implications to the contrary that may be drawn from the language of the Agency contract. It would, no doubt, have been helpful if the other parties to the Agency agreement had been called and perhaps their books and returns produced. The respondent did not produce them, but rested his case solely on the implications to be drawn from the contract. The petitioner could hardly have been expected to be prepared in more detail on this point when neither the notice of deficiency, the pleadings, nor the respondent's opening statement gave any hint of the contention now being discussed.

We can find no basis in fact for respondent's alternative argument. It is clear that the furs had been disposed of by petitioner before the end of the year 1923 and they formed no part of its inventory. They were delivered to the New York Auction Company for the account of the Agency in 1923, and the books of petitioner show a charge to the Agency of $171,124.71 on November 30, 1923, for the goods.

We think the petitioner is entitled to deduct the item of $30,327.59 as an ordinary and necessary business expense. Having reached such a conclusion, we need not decide whether the payment is deductible as a tax under section 234(a) (3) of the taxing act.

*Decision will be entered under Rule 50.*